UNITED STATES DISTRICT COURT  
EASTERN DISTRICT OF NEW YORK  
C/M

----------------------------------------------------------- X  
ROBIN ALAN FULLER, :  
: **MEMORANDUM DECISION AND**  
Movant, : **ORDER**  
:  
- against - : 22-cv-1948 (BMC)  
: 16-cr-0254 (BMC)  
:  
UNITED STATES OF AMERICA, :  
:  
Respondent. :  
----------------------------------------------------------- X

**COGAN**, District Judge.

Movant Robin Alan Fuller seeks habeas corpus relief under 28 U.S.C. § 2255, as well as the return of seized property under Fed. R. Crim. P. 41(g). He has had four court-appointed lawyers in this case and claims that all of them were constitutionally ineffective. His motion is too vague and conclusory, however, to warrant any relief. His § 2555 motion is denied, and his Rule 41(g) motion is granted in part and denied in part as described below.

## BACKGROUND

Fuller was convicted upon his guilty plea for possession of child pornography, 18 U.S.C. § 2252(a)(4)(B). From arraignment, he was represented by Assistant Federal Public Defender Michael Schneider, Esq. On April 19, 2017, after his guilty plea and the filing of sentencing memoranda, Mr. Schneider moved to be relieved, stating that:

> [I]t has become apparent to me that Mr. Fuller believes that I have been actively working against his interests in this matter. Though Mr. Fuller has never specifically requested new counsel, his communications with me have become so accusatory that I feel that I must ask the Court to schedule a status conference, in advance of sentencing, to discuss Mr. Fuller's representation.

The hearing on the motion confirmed that Fuller's relationship with Mr. Schneider was irretrievably broken.

The Court accordingly appointed new counsel pursuant to the Criminal Justice Act, Robert Soloway, Esq., a member of the CJA panel of this Court, and reset sentencing. In appointing Mr. Soloway, the Court expressly instructed him to consult with Fuller to see if Fuller wanted to move to withdraw his guilty plea since he was unhappy with Mr. Schneider's representation. No such motion was filed, and Fuller has never indicated, including in the current motion, that withdrawal of the plea was a strategy that counsel should have followed. Mr. Soloway thus entered the case at a time when all that remained to be done was sentencing.

After a Fatico hearing (United States v. Fatico, 579 F.2d 707 (2d Cir. 1977)), at which Fuller's daughter testified as to the abuse he had inflicted on her, the Court sentenced him to 97 months' custody to be followed by five years of supervised release with special conditions. Mr. Soloway filed a notice of appeal.

The Government moved for summary affirmance and Mr. Soloway filed an Anders motion. See Anders v. California, 386 U.S. 738 (1967). Rejecting both, the Second Circuit appointed counsel for Fuller on appeal, Erin McCampbell Paris, Esq., who filed a brief and argued the appeal before the Court of Appeals. In its decision, the Second Circuit affirmed the custodial sentence portion of the judgment but remanded the case with directions for the Court to reconcile the oral pronouncement of one of the conditions of supervised release (the "Internet Restriction Condition") with the written judgment, and to further address forfeiture. See United States v. Fuller, 801 F. App'x 14 (2d Cir. 2020).

On remand, it became apparent that Fuller had ineffective assistance claims against both Mr. Soloway and Ms. Paris. Pursuant to an Order of the Circuit granting Ms. Paris's motion to

2

withdraw and directing this Court to appoint new counsel, this Court appointed a second CJA counsel, Susan Kellman, Esq. She reached agreement with the Government and the Probation Department on the wording of the Internet Restriction Condition that had been the subject of the appeal, and the Mandate was fully implemented by a second amended judgment entered on April 14, 2021.

On March 7, 2022, in anticipation of seeking relief under 28 U.S.C. § 2255, Fuller filed a *pro se* motion for a "change of venue" so that he could make his § 2255 motion in the Northern District of Texas, where he was (and is) being held. He argued principally that it would be more convenient for him, but also because he was not getting adequate responsiveness from Ms. Kellman and thought he could get new counsel appointed in the Northern District of Texas.[1]

Fuller had severe problems communicating and relating to Ms. Kellman, too. With the one-year statute of limitations on the second amended judgment about to expire, and unable to perceive any viable claims from her discussions with him, Ms. Kellman filed what we may call a "placeholder" § 2255 motion on April 5, 2022. That motion identified claims of ineffective assistance of trial counsel and appellate counsel. The claims contained no specifics but advised that petitioner would file a supplemental affidavit in support of the motion. By letter filed at the same time, Ms. Kellman explained that her relationship with Fuller had broken down and he had angrily discharged her:

> I filed this petition on Mr. Fuller's behalf in order to preserve any rights that he might have for relief pursuant to Section 2255, notwithstanding that I have not been able to identify any grounds to support such a motion. I have done my best, in writing and by telephone, to explain to Mr. Fuller that I do not believe that he

---

[1] The Court is not certain, but it may be that Fuller expected that Ms. Paris would continue representing him in district court upon remand. However, the Second Circuit had granted her motion to withdraw on February 20, 2020 and directed this Court to appoint new counsel.

3

> has a cognizable claim for relief; however, my explanations have fallen on deaf ears.
>
> Further, I have attempted to explain to Mr. Fuller that his ability to file a 2255 petition is extremely limited because he pled guilty pursuant to a plea agreement in which he waived many of the claims that he now wishes to assert. To assist him, I have provided relevant portions of his plea agreement, which includes a waiver of his right to appeal or collaterally attack his conviction and the plea transcript, that would undermine his ability to make many of the claims he now seeks to assert. To underscore the fragility of his endeavor, I have provided ample case law that, perhaps, can explain his situation better than I can.
>
> I will not burden the Court with a line-by-line and issue-by-issue recitation of Mr. Fuller's claims; suffice it to say, however, that my attempts to explain the law and his options have resulted in him hanging up the telephone and discharging the undersigned explaining that I am nothing more than a tool for the same government that is illegally prosecuting him.

She asked to be relieved, and the Court granted that motion.[2]

Fuller did not file an affidavit to support the placeholder motion, but on April 22, 2022, he filed a *pro se* § 2255 motion. That motion contained four ineffective assistance claims, one against each of his former lawyers. In the discussion below, the Court will combine consideration of the represented and *pro se* § 2255 motions.

The last motion the Court has from Fuller is his *pro se* Rule 41(g) motion for the return of his property. That motion seeks return of 15 pieces of electronic equipment seized from Fuller at the time of his arrest. The equipment consists mostly of data storage devices, but also includes a MacBook, iPad Mini, and a cellphone. In addition to the electronic equipment, he demands the return of his Ukrainian and U.S. passports.

---

[2] Although Fuller did not move for replacement counsel, the Court would not have granted it anyway. There is no right to counsel on a § 2255 motion, see Pennsylvania v. Finley, 481 U.S. 551 (1987), and Fuller had expressed extreme dissatisfaction with a highly regarded Federal Public Defender, two highly regarded attorneys on this Court's CJA panel, and his appellate attorney that the Second Circuit appointed. Appointing another counsel would have been futile.

## DISCUSSION

I.     **The § 2555 Motion**

      A.  **Applicable Law**

A person convicted of a federal crime may move the sentencing court to "vacate, set aside, or correct the sentence" if his sentence "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Ineffective assistance of counsel claims may properly be raised in motions pursuant to § 2555. See Massaro v. United States, 538 U.S. 500, 508 (2003); United States v. DeLaura, 858 F.3d 738, 743-44 (2d Cir. 2017). Such a motion requires a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

The standard for showing ineffective assistance of trial counsel is too well-established to require much discussion. Under Strickland v. Washington, 466 U.S. 668, 687-88 (1984), the defendant must satisfy a two-prong test. First, he must demonstrate that "his counsel's representation fell below an objective standard of reasonableness." McCoy v. United States, 707 F.3d 184, 187 (2d Cir. 2013) (citing Strickland, 466 U.S. at 687-88). Second, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. "When considering the first prong, [courts] 'strongly presume[ ] [that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Jackson v. Conway, 763 F.3d 115, 152 (2d Cir. 2014) (quoting Cullen v. Pinholster, 563 U.S. 170, 189 (2011)). A petitioner therefore bears a "heavy" burden to show that counsel's "representation amounted to incompetence under prevailing professional norms." Harrington v. United States, 689 F.3d 124, 129-30 (2d Cir. 2012).

The Strickland standard is equally applicable to claims of ineffective assistance of appellate counsel. Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992). Thus, Fuller must show that his appellate counsel's conduct fell outside the range of professionally competent assistance and that but for counsel's inadequate representation on appeal, there is a reasonable probability that the result of the appeal would have been different. See id.

### B. Venue

Section 2255 motions claiming ineffective assistance of counsel leading up to or challenging a conviction or sentence must be brought in the district where the conviction occurred. The statute provides that in bringing such a motion, a defendant "may move the court which imposed the sentence to vacate, set aside, or correct the conviction." Indeed, even if a defendant brings a § 2241 motion contending that his confinement at an out-of-district facility is improper because of his attorney's ineffective assistance at sentencing, that motion must be brought in the court which imposed the sentence. See Fisher v. Hudson, 665 F. App'x 59 (2d Cir. 2016). Although the Second Circuit has suggested that habeas corpus proceedings are subject to 28 U.S.C. § 1404(a), Meadows v. State of N.Y., 426 F.2d 1176 (2d Cir. 1970), Fuller has not identified any convenience factors other than his own presence in Texas to warrant a transfer. Every action and omission about which Fuller is complaining occurred in this district. Moreover, since the motion is being determined on the papers, it is not inconvenient for Fuller to have his motion litigated here. Finally, it would be pure speculation to find that a federal judge in the Northern District of Texas would appoint another counsel given Fuller's perpetual dissatisfaction with four attorneys previously appointed for him. The motion to change venue is accordingly denied.

### C. Merits of the § 2255 Motion

#### 1. Claims raised in the motion

Although the Court will refer to the *pro se* motion instead of the placeholder motion, the former gives only slightly more detail than the latter. The claims against each of his former counsel are about the same: general statements to the effect that no one returned his calls and no one listened to him. In addition, it seems likely that Fuller has merged in his mind some of his former lawyers on some issues, as his claims do not mesh with the role and gender of the attorney about whom he is complaining.

As noted above, his first attorney was Mr. Schneider. He appears to be the subject of Ground One of the motion, which is labeled "Ineffective assistance of trial counsel." The entirety of Fuller's presentation is:

> Counsel was unprofessional in his conduct toward my requests to him, specifically regarding the PSIR, which I communicated that I could not agree to. I sent 32 handwritten, double sided pages delineating all of the reasons why I disagreed with each item in the PSIR. I also sent repeated emails requesting changes be made to the PSIR and that I could not like and accept it as written.
>
> Counsel failed to address to the Court any of my concerns regarding the PSIR. Had he done so the Court could have held an evidentiary hearing to correct the PSIR. If that had been done perhaps other circumstances would also have come out differently, such as testimony that was self-refuting in at least four places, yet the "witness" was not perjured [sic]. Counsel also was the one responsible for setting up the witness interview and the transcription of her perjured testimony.

Ground Two, although labeled "Ineffective assistance of appellate counsel," appears, for reasons explained below, to merge Fuller's complaints against Ms. Paris and Ms. Kellman. Fuller's entire argument on Ground Two is as follows:

7

> Unprofessional conduct of counsel in failing to communicate with me. Counsel did file an appeal, but appeal had nothing to do with what issues I raised.
>
> Counsel herself stated that she was not an appellate attorney but was doing this only as a favor to Judge Cogan, as she had no idea how to proceed, so had filed without consulting with me in order to achieve something.

Ground Three, labeled "Ineffectiveness of counsel for current appointed counsel," appears to be directed at Ms. Kellman. The entirety of that presentation is:

> Unprofessional conduct of counsel for failure to communicate with myself. Multiple attempts were made by myself, by mail and telephone, as well as others on my behalf, to contact counsel. None of the mail was ever answered, and all but one telephone call went unanswered. The one individual who was able to speak with counsel was told "he will just have to call me himself." The telephone numbers and addresses on counsel's letterhead are suspect.
>
> I have been unable to get in contact with counsel via mail or telephone for nearly a year. I had heard nothing until I sent a motion requesting change of venue, at which point counsel called the institution. The number that was given to the case manager is entirely a different area code and not listed on counsel's letterhead. Counsel refuses to answer mail sent to her law firm address and in her cover letter to the judge admits she can barely communicate with him, finding no cognizable claims for relief. Notwithstanding the fact that counsel refuses to hear anything that I tell her, simply stating the waiver of my right to appeal in the plea bargain and colloquy.

Ground Four, labeled "Ineffectiveness of sentencing counsel," appears directed at Mr. Soloway's representation. The entirety of that presentation is:

> Counsel's unprofessional conduct by having plainly stated "I don't want to work for you, I think you are guilty. I am only being paid to work on this 5 point sentencing enhancement based on behavior as stated in the plea agreement." Counsel also examined the "witness", Nanette Poole, "nay Fuller" during the sentencing hearing.
>
> Counsel filed an amicus brief to that effect that I had no cognizable "non-trivial reasons for an appeal" with the Court to have himself removed, after not listening to any of my reasons whatsoever.

8

2. Analysis

I will address Fuller's grounds for relief in the order in which he has presented them. None of them raise an issue of either objective unreasonableness or prejudice under Strickland.

**Ground One**: Fuller's complaints about Mr. Schneider are largely mooted by the fact that he was replaced by Mr. Soloway, and Fuller thus had a second chance to fix any problems caused by Mr. Schneider's representation. In fact, as noted above, Fuller was invited to move to withdraw his guilty plea if he thought Mr. Schneider's representation had prejudiced him, and there is no indication that he chose to do so.

More importantly, Fuller's accusation against Mr. Schneider is just factually wrong. The record shows that Mr. Schneider's sentencing submission contained a line-by-line attack on the factual statements in the PSR. In total, Mr. Schneider's sentencing memorandum objected to 25 paragraphs of factual assertions in the PSR. Indeed, some of those objections, concerning Fuller's sexual abuse of his children, led to the Fatico hearing, in which the Court found by a preponderance of the evidence that the statements in the PSR were accurate.

**Ground Two:** It is not entirely clear which attorney plaintiff is complaining about. It appears to be Ms. Paris, both because the point is labeled "Ineffective assistance of appellate counsel," and because he states that "she did file an appeal, but appeal had nothing to do with what issues I raised." However, he also alleges that "Counsel herself stated that she was not an appellate attorney but was only doing this as favor to Judge Cogan, as she had no idea how to proceed, so had filed without consulting with me in order to achieve something."

That last sentence can't be a reference to Ms. Paris, as she was appointed by the Circuit, not this Court. In addition, this Court has never had Ms. Paris before it (she practices in Buffalo) and had no knowledge of who she was until the Circuit issued its Mandate based on her partially successful appeal. The Court finds that, being a member of the Second Circuit Panel for appellate attorneys, and with her bio noting that she "has extensive appellate briefing experience, including successful work in the United States Supreme Court and the Ohio Supreme Court,"[3] she would not have told Fuller that she "was not an appellate attorney" (which she is) and that she "was doing this only as a favor to Judge Cogan" (who she doesn't know).

In applying Strickland to the appellate context, the most basic principle is that appointed counsel has no obligation to raise every non-frivolous or colorable argument that the defendant wishes to have raised. See Jones v. Barnes, 463 U.S. 745 (1983). Similarly, the Supreme Court has held that "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000). And an appellate counsel, unsurprisingly, is not even permitted to raise frivolous claims. McCoy v. Court of Appeals of Wis., Dist. 1, 486 U.S. 429, 436 (1988).

This case is atypical in that Fuller has not directed the Court to the points of error that he would have liked to have raised on appeal. The Court therefore cannot compare the strength of the points that Fuller believes Ms. Paris should have raised against the points of error that she did raise. That leaves the Court no choice but to evaluate Ms. Paris's performance on its own. On

---

[3] https://www.fcalawfirm.com/attorneys/erin-m-campbell/

that basis, the record demonstrates that her decisions were objectively reasonable, and the Court cannot find any indication of prejudice to Fuller.

Ms. Paris filed a 31-page brief in the Second Circuit. It raised three points. First, Ms. Paris challenged the substantive reasonableness of Fuller's 97-month sentence. Second, she challenged the Internet Special Condition. Third, she argued that the Order of Forfeiture against Fuller did not comply with Fed. R. Crim. P. 32.2. The brief is well-written, and the arguments are forcefully presented.

She also filed a 20-page reply brief of the same quality. Part of that brief addressed the Government's argument that Fuller had waived his right to appeal in his plea agreement. Ms. Paris argued that because the Government had earlier moved for summary affirmance without raising the waiver issue, the Government could not raise waiver in its opposing brief. Ms. Paris's argument, on which she had to prevail if the Circuit was going to consider Fuller's appeal at all, analyzed out-of-circuit authority after noting that there was no on-point Second Circuit authority. She argued that in a similar case, the 10th Circuit had found that the Government's failure to raise the plea agreement appeals bar in response to an Anders motion constituted a waiver of its right to rely on the appeals bar. See United States v. Calderon, 428 F.3d 928 (10th Cir. 2005).[4]

Moreover, as noted above, the appeal was partially successful. Although the Second Circuit found the sentence substantively reasonable, Ms. Paris prevailed on her latter two points – that the Internet Restriction Condition and the forfeiture order were not properly handled to the

---

[4] Because the Second Circuit affirmed the custody term of the sentence, it chose not to address the appellate waiver. Fuller, 801 F. App'x at 18 n.1.

point that a remand was necessary. Again, Fuller has not directed this Court to any other point of error that had a better chance of prevailing.

Finally, it is important to note that the reason the Circuit appointed Ms. Paris is because defense counsel had filed an <u>Anders</u> motion, and the Government had sought summary affirmance. Ms. Paris therefore entered a case that was already in salvage mode. Fuller has not demonstrated that there were any game-changing arguments that could be raised on appeal, and Ms. Paris did as much as any reasonable attorney could with the case she had been handed.

**Ground Three:** The Court concludes that this point of error must refer to Ms. Kellman, as Fuller describes her as "current" appointed counsel, and the Court had not yet relieved her at the time Fuller filed his *pro se* § 2255 motion. The Court appointed her for two purposes: (1) to help implement the Second Circuit's Mandate in a manner satisfactory to Fuller; and (2) to represent him in connection with filing a § 2255 motion.

The record is clear that she achieved the former, and, as with all his other attorneys, Fuller could not sufficiently communicate with her to perform the latter to his satisfaction. It may be that some of Fuller's frustration is due to the difficulties inherent in communicating with a client in custody in another state. But the Court notes that throughout these proceedings, Fuller has repeatedly asserted that he has not received orders of the Court even though the docket reflects they were sent to the proper address. In addition, the Court credits Ms. Kellman's representations to the Court, which are also supported by the paucity of the *pro se* § 2255, that neither Fuller nor she could identify any viable claim for relief.

In any event, his complaint against Ms. Kellman does not come close to warranting habeas relief. Even assuming *arguendo* that an objectively reasonable attorney would have made

12

a better effort to communicate with him than Ms. Kellman did – and that assessment would have to take into account that Fuller has been unable to effectively communicate with any of his attorneys – he has to show what he lost to demonstrate prejudice under Strickland. He nowhere explains what claims he wanted her to raise that the failure to communicate caused him to forfeit. Moreover, the claims that he has raised in his *pro se* motion are precisely the same as Ms. Kellman raised in the placeholder motion – ineffective assistance of trial and appellate counsel. Unhappiness with an attorney's responsiveness, by itself, is insufficient under Strickland.

**Ground Four:** This claim appears to have been raised against Mr. Soloway. It is factually correct, in part, as Mr. Soloway did cross-examine defendant's daughter at the Fatico hearing, and he did file an Anders brief in the Second Circuit. But like his attack on Ms. Paris, Fuller does not explain how Mr. Soloway's cross-examination of Fuller's daughter was defective (other than the Court determined the factual issue against Fuller), or how he was prejudiced by Mr. Soloway filing an Anders brief when the Circuit denied summary affirmance and appointed Ms. Paris.

Moreover, Fuller's alleged quotation from Mr. Soloway is flatly inconsistent with the docket. Although the unanticipated 5-point Guideline increase that appeared in the PSR was a principal focus of Mr. Soloway's efforts, he also put in substantial sentencing memoranda both pre- and post-Fatico hearing. In addition, once the Government advised that it was going to call Fuller's daughter as a witness at the Fatico hearing, Mr. Soloway quickly obtained the appointment of a private investigator under the CJA for the purpose of investigating the witness's background for information that could be used in cross-examination.

Fuller has pointed to no act or omission by Mr. Soloway in the absence of which his sentence would have been different.

13

## II. The Rule 41(g) motion

Fuller's indictment included a claim for forfeiture for all of the electronic equipment that he is demanding in the instant motion, except for his iPhone and iPad Mini. When Fuller entered into his plea agreement, he agreed to forfeit that electronic equipment: "The defendant acknowledges that he owns property that is subject to forfeiture as a result of his violation of 18 U.S.C. § 225l(d)(l)(A) *as alleged in the Indictment and the Forfeiture Allegation therein (the "Forfeited Property")* (emphasis added). Property forfeited pursuant to a plea agreement cannot be recovered under Rule 41(g). Fuller has never sought relief from his plea agreement or contended that his consent to forfeiture was involuntary, although, as noted above, the Court suggested he consider moving to withdraw his plea when it appointed Mr. Soloway. Having voluntarily agreed to forfeit the property he is now seeking, his Rule 41(g) motion as to that property fails. See Rogala v. United States, No. 12-mc-752, 2013 WL 5202784 (E.D.N.Y. Sept. 13, 2013).

As to the iPhone and iPad, the Government has represented that they were used to upload child pornography for the exploitation of children. According to the PSR, which the Court adopted after working through objections to the report, when Fuller was arrested at JFK Airport, these items were inspected and found to contain numerous images of child erotica and child pornography depicting prepubescent girls partially clothed and set in sexual poses exposing their genitalia. Fuller has not denied this. That makes these items derivative contraband, not subject to recovery under Rule 41(g). See Sash v. United States, No. 09-cv-450, 2009 WL 3007379 (S.D.N.Y. Sept. 22, 2009) (Chin, D.J.).

As for Fuller's two passports, the Government argues that because Fuller is a convicted sex offender, he cannot be issued a passport without a stamp so identifying him, and because his

14

two passports do not contain such a stamp, they are also contraband. The Government relies on 22 U.S.C. § 212b, but that statute provides that any *new* U.S. passport issued to Fuller must bear the identifying stamp, and it does not appear to apply at all to his Ukrainian passport. Although the statute also grants the Secretary of State discretion to revoke a previously issued, non-stamped passport, the Government has presented no evidence that the Secretary of State has done so. Accordingly, the Government is directed to return Fuller's passports to him upon his release from custody.

## CONCLUSION

Fuller's § 2555 motion is denied, and his Rule 41(g) motion is denied except to the extent noted above.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

_____
U.S.D.J.

Dated: Brooklyn, New York
       October 22, 2022